IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON S. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil No. 07- 260 |
| ALLSTATE FIRE & CASUALTY ) | Judge Kim R. Gibson |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Jason Miller filed the instant action in the Court of Common Pleas of Blair County on August 23, 2007. Doc. No. 1, Ex. A ("Compl."). On October 10, 2007, Defendant Allstate Fire & Casualty Insurance Co. ("Allstate") removed the action to this Court, pursuant to 28 U.S.C. §1332. Doc. No. 1. Currently pending before the Court for consideration is Defendant Allstate's Motion to Strike portions of the Plaintiff's Complaint (Doc. No. 2) and Allstate's Motion to Dismiss (Doc. No. 4). For the following reasons, both motions will be denied.

### Factual Background

On April 14, 2006, Miller was involved in an automobile accident in Huntingdon County, Pennsylvania. Compl., ¶ 3. Prior to the accident, Allstate issued Miller an automobile insurance policy bearing policy number 9 08 985669 03/28 for the 1990 Chevrolet truck involved in the accident. *Id.* ¶ 5. The policy provides coverage for first party medical expenses resulting from automobile accidents. *Id.* Specifically, the policy provides coverage for medical expenses with an aggregate limit of $177,500. *Id.* ¶ 6.

1

Miller alleges that as a result of the August 23, 2007 accident, he suffered various injuries to his neck and back, and incurred various medical expenses as a result of these injuries. *Id.* ¶¶ 12. In particular, Miller obtained medical treatment from chiropractor Bonny Rowell. *Id.* ¶ 17. Miller sought coverage for these expenses pursuant to the terms of the insurance policy. *Id.* ¶18. According to Miller, Allstate paid a portion of the medical expenses for Dr. Rowell's treatments. *Id.* ¶ 16. However, Miller alleges that Allstate refuses to pay "an outstanding balance in excess of One Thousand Dollars ($1,000)" in medical bills for Dr. Rowell's services. *Id.* ¶ 17.

## I.  Defendant's Motion to Strike

Allstate seeks to strike certain portions of Miller's Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Specifically, Allstate argues that paragraphs 8 and 9 of Miller's Complaint allege the existence of "other coverages or terms under the [subject] policy unrelated to the claim for medical payments." Doc. No. 2, ¶ 8. Allstate also argues that while paragraph 33 of the Complaint alleges that the Miller has suffered physical pain and suffering, damages for such are not recoverable under either the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") or the Pennsylvania Bad Faith statute. *Id.* ¶ 9. In the instant motion, Allstate also contends that paragraph 34(l) references a "potential underinsured claim" that is unrelated to Miller's claims. *Id.* ¶ 10. Finally, Allstate argues that paragraph 34(r) of the Complaint, which alleges that Allstate engaged in misleading and false advertising, is unrelated to Miller's coverage claims. *Id.* ¶ 11.

### Standard of Review under Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> The court may strike from a pleading an insufficient defense

2

> or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

Fed.R.Civ.P.12(f). Under Rule 12(f), the standard for striking portions of a plaintiff's complaint "'is strict and . . . only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (quoting *Becker v. Chicago Title Ins. Co.*, No. Civ. A. 03-2292, 2004 WL 228672, at *6 (E.D. Pa. Feb.4, 2004)). Moreover, striking portions of a plaintiff's pleadings is a "drastic remedy," which should be used only when justice requires it. *Id.* (quoting *United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp.2d 931 (S.D. Ohio 2002)) (quotations omitted); *see also Tivoli Realty v. Paramount Picture*, 80 F. Supp. 800 (D. Del. 1948) (holding that, "[m]otions to strike are rather strictly considered and have often been denied even when literally within the provisions of Rule 12(f) where there is no showing of prejudicial harm to the moving party"); *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (providing that while "motions to strike may save time and resources by making it unnecessary to litigate claims that will not affect the outcome of the case, motions to strike generally are disfavored."); *Am. Standard Life and Accident Ins. Co. v. U.R.L., Inc.*, 701 F. Supp. 527, 531 (M.D. Pa. 1988) (citations omitted) ("Motions to strike are generally viewed with disfavor and are rarely granted.").

Allegations are scandalous and will be stricken if they are wholly unrelated to the controversy or if the moving party will be prejudiced by including them in the pleadings. *Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F.Supp. 1279, 1292 (D. Del. 1995) (citing *Talbot v. Robert Matthews*

3

*Distrib. Co.*, 961 F.2d 654, 664 (7th Cir.1992)). Allegations are immaterial or impertinent if they do not have an important relationship to the claims pled or do not pertain to the issues involved. *Id.* (citations omitted). When allegations in the Complaint could lead to a "better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation," they will not be considered immaterial, impertinent or scandalous, and a motion to strike will be denied. *Id.* (citing 5A Wright & Miller at § 1382, at 695-96). Motions to strike are decided on the pleadings alone. *DeLa Cruz*, 521 F. Supp. 2d at 429 (E.D. Pa. 2007) (citing *North Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 159 (E.D. Pa. 1994)).

## Discussion

*1.     Paragraphs 8, 9 and 34(l) of Miller's Complaint*

Count I of Miller's Complaint seeks damages pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §1701, *et seq.* and the Pennsylvania Bad Faith statute, 42 Pa. C.S.A. §8371. Specifically, Miller alleges that Allstate wrongfully denied him first-party medical benefits as a result of an alleged peer review report. Compl., Count I. Miller's Complaint alleges that Allstate "did not make payment of some medical expenses through Dr. Rowell as required under the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law and subject insurance policy."*Id.* ¶16.

In paragraph 8 of the Complaint, Miller avers:

> At all times material herein, the aforementioned policy provided, in part, underinsured motorist coverage in the amount of $100,000, with stacking, for the Chevrolet Truck as well as underinsured motorist coverage for a second vehicle in the amount of $100,000.

*Id.* ¶ 8. Paragraph 9 of the Complaint alleges:

4

> At all times material herein, the aforementioned policy of automobile insurance for the 1990 Chevrolet Truck provided, in part, full tort option for [the Plaintiff].

*Id.* ¶ 9. Paragraph 34(l) alleges that Allstate engaged in "unreasonable and wanton" conduct in denying payment of Miller's medical bills by:

> Using a peer review to limit its financial exposure to a potential underinsured claim of the Plaintiff.

*Id.* ¶ 34(l).

Allstate argues that these paragraphs of the Miller's Complaint are immaterial, impertinent, or scandalous under Rule 12(f), insofar as they are unrelated to Miller's claims for coverage of medical payments under the policy. Doc. No. 2, ¶¶ 8-9. However, Allstate fails to demonstrate that these allegations are not possibly related to the Miller's claims. *See De La Cruz*, 521 F.Supp. 2d at 428-9 (quoting *River Road Dev. Corp. v. Carlson Corp.-Ne*, No. 89-7037, 1990 WL 69085, at *3 (E.D.Pa. May 23, 1990)) (quotations omitted). Additionally, Allstate does not show that it will be unduly prejudiced by allegations that Miller's policy included underinsured motorist coverage and a full tort option.

In his Complaint, Miller alleges that Allstate denied payment of certain medical expenses, which Miller alleges was required under the terms of the insurance policy. Compl., ¶ 18. Moreover, Miller alleges that Allstate relied upon an alleged peer review process and report which were "defective" in determining that Miller's claim should be denied. *Id.* ¶ 29. The Complaint states that Allstate's abuse of the peer review process, and reliance on said peer review report led to an inaccurate conclusion, for which Miller is entitled to damages under the MVFRL. *Id.* ¶ 33. Furthermore, Miller alleges that Allstate acted in bad faith in unreasonably denying him insurance

benefits under the policy. *Id.* ¶ 40.

Because Miller's claims are premised upon the insurance contract between Miller and Allstate, allegations pertaining to other policy provisions are possibly related to Miller's claims for benefits under the policy. Furthermore, insofar as Miller alleges a mishandling of his claims and a breach of his insurance contract with Allstate, allegations of any potentially applicable insurance policy provisions may be helpful to the disposition of Miller's claims that Allstate wrongfully denied payment of the Miller's medical expenses, misused the peer review process, and/or acted in bad faith in the handling of the Miller's claims. Miller makes specific allegations that Allstate used the peer review process, without a proper basis, in violation of the MVFRL, in order to limit its exposure to a potential underinsured claim. *Id.* ¶34(l). Because Miller is alleging misuse of the peer review process and bad faith, allegations of the existence of underinsured motorist coverage are potentially relevant and/or useful to the disposition his specific claims as to how and why Allstate misused the peer review process. Moreover, because Allstate has not alleged or demonstrated that it will be prejudiced by these allegations in the pleadings, its motion to strike these portions of the Complaint will be denied. Fed. R. Civ. P. 12(f); *Great West Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993) (citing 5A WRIGHT & MILLER, §1381 at 672) (holding, "[m]otions to strike are often not granted if there is an absence of a showing of prejudice to the moving party").

2.   *Paragraph 33 of Miller's Complaint*

Paragraph 33 of Miller's Complaint alleges that:

> [s]olely as a result of the Defendant's action and/or inactions, the Plaintiff has suffered physical pain and suffering that would otherwise have been reduced or minimized but for the Defendant's knowing, willful and reckless abuse of the peer review process and its failure to make payment of the outstanding treatment expenses as provided

6

by Dr. Rowell.

Compl., ¶ 33. Allstate argues that the statement "Plaintiff has suffered physical pain and suffering" should be stricken, as it alleges damages not recoverable in Miller's claims for coverage or bad faith. Doc. No. 2, ¶ 9. However, in this paragraph, Miller is not alleging damages not available to him. Rather, the allegations that he experienced physical pain is related to his claim that Allstate's abuse of the peer review process was reckless and wanton in violation of the MVFRL. Compl, ¶ 33. Furthermore, this claim is related to Allstate's continued refusal to pay medical expenses that Miller has incurred as a result of treatments provided him by Dr. Rowell. Compl., ¶17. This portion of Miller's Complaint will not be struck, insofar as his claims of ongoing pain are related to his claims for payment of medical expenses. Moreover, Allstate has not alleged that it will be prejudiced by this particular allegation in Miller's Complaint.

*3.    Paragraph 34(r) of Miller's Complaint*

In paragraph 34(r) of the Complaint, Miller alleges:

> The Defendant, through its employees, agents and/or representatives, has engaged in unreasonable and wanton conduct in denying payment of the subject bills as follows:
>
> > (r) Engaging in knowingly false, misleading and deceptive advertising designed to place the Plaintiff in a false sense of trust that he would be in "good hands" through the purchase of insurance from the Defendant; ...

Compl., ¶ 34. Allstate argues that this allegation, pertaining to the Allstate's advertising practices, is unrelated to Miller's claims and under Rule 12(f) should be struck. Doc. No. 2, ¶11.

Miller makes the above allegation in support of his claim for bad faith in violation of 42 Pa. Const. Stat. Ann..§ 8371. Under the liberal standard of review in a motion to strike, the Court cannot

7

say that this claim is unrelated to Miller's claims of bad faith conduct on the part of Allstate. Moreover, Allstate has not shown that this claim is so "wholly unrelated to the controversy or if the moving party will be prejudiced by including them in the pleadings." *Delaware Health Care, Inc.* 893 F.Supp. at 1292 (D.Del. 1995) (quoting *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir.1992)) (quotations omitted).

## II. Defendant's Motion to Dismiss

Allstate has also filed a motion to dismiss the second count of Miller's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Specifically, Allstate argues that the second count of Miller's Complaint, alleging bad faith in violation of the Pennsylvania Bad Faith statute, 42 PA. CONST. STAT. ANN.§ 8371, is preempted by the provisions in § 1797(b) of the Pennsylvania MVFRL. Doc. No. 4, ¶ 7. According to Allstate, Miller's claims arise "solely from [Allstate's] use of the peer review process authorized by §1797(b) . . . ." *Id.* ¶ 6. Allstate contends that, because the Pennsylvania MVFRL provides the sole relief for claims of this nature, Miller's bad faith claims must be dismissed. *Id.* ¶¶ 6-8).

### Standard of Review under 12(b)(6)

When analyzing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support the claim. *Lake v. Arnold*, 112 F.3d 682, 688 (3d. Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)). Under Rule 12(b)(6), a complaint may be properly dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 167 L. Ed. 2d 929, 949 (2007). Moreover, under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff is required

8

to provide a defendant fair notice of his claims, by a plain statement of the claim and the grounds upon which they are made. *Id.* at 1964, 1965, n. 3. "Fair notice under Rule 8(a)(2) depends on the type of case-some complaints will require at least some factual allegations to make out a 'showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Twombly*, 127 S.Ct. at 1964). The question to be resolved is whether the "factual allegations . . . [are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, 167 L. Ed. 2d at 940 (2007).

Under this standard, the Court must accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (citations omitted). However, the Court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir.2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997)). Nor must the Court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, 167 L. Ed. 2d at 940 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

Finally, the defendant bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

9

## Discussion

In its Brief in Support of Motion to Dismiss (Doc. No. 5), Allstate argues:

> "Section 1979(b) of the Pa. MVFRL provides the statutory basis for an insurer to contract with a peer review organization ("PRO") to evaluate health care services given to an injured person ... [it] provides the 'exclusive first party remedy for bad faith denials by insurance companies with respect to claims arising out of automobile accident.'"

Doc. No. 5, p. 2 (quoting *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir. 1994)). Allstate argues that because Miller brings a claim for first party benefits under the Pennsylvania MVFRL, his claims brought pursuant to the Pennsylvania Bad Faith statute are preempted, insofar as the two statutes, "offer[] a conflicting set of remedies. . . . . [T]he special provisions of §1797(b) must prevail over the general provisions of the 'bad faith statute.'" Doc. No. 5, p. 3 (quoting *Harris v. Lumbermans Mut. Cas. Co.*, 409 F. Supp. 2d 618, 629-21) (E.D. Pa. 2006)).

In response, Miller argues that Allstate mischaracterizes the allegations in the Complaint as being based solely from Allstate's use of the peer review process. Doc. No. 8, p. 2. Miller contends that, in fact, "the claim for bad faith pursuant to 42 Pa. C.S.A. § 8371 as well as the claim under 75 Pa. C.S.A. §1797 has been appropriately raised." *Id.* at 2. Specifically, Miller argues that because his claims of bad faith arise from allegations of an abuse of the peer review process, his bad faith claims are separate and distinct from his claims under section 1797 of the MVFRL and are therefore not preempted. *Id.* at 4-5.

The Pennsylvania MVFRL permits insured individuals or health care providers to recover first-party medical benefits, for which an insurer has denied coverage under an automobile insurance

10

policy based upon a finding by a peer review organization that the treatments administered by the provider were not "medically necessary". 75 Pa. Const. Stat. Ann. § 1791; *Bennett v. State Farm Fire & Cas. Ins. Co.*, 890 F. Supp. 440, 443 (E.D. Pa. 1995). Additionally, the MVFRL outlines the procedure by which an insurer may invoke a peer review process in its determination of whether particular medical treatments are necessary and therefore covered under the policy. 75 PA. CONST. STAT. ANN. § 1797(b). Specifically, this section provides:

> Peer review plan.--Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to a PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment or services.

75 Pa. Const. Stat. Ann. § 1797(b). The standards for use of the peer review process and proper procedures are set forth in 31 Pa. Code § 69.52. *See* Ronca, Sloane, *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law*, 2d Ed. at §4.1(b)(iii) (2007). Under 31 Pa. Code § 69.52(a):

> A provider's bill shall be referred to a PRO only when circumstances or conditions relating to medical and rehabilitative services provided cause a prudent person, familiar with PRO procedures, standards and practices, to believe it necessary that a PRO determine the reasonableness and necessity of care, the appropriateness of the setting where the care is rendered, and the appropriateness of the delivery of the care. An insurer shall notify a provider, in writing, when referring bills for PRO review at the time of the referral.

Under the MVFRL, if an insurer denies coverage for medical expenses based on a peer review finding that the treatments were not medically necessary and the Court then finds that the

11

treatments were in fact medically necessary, "the insurer must pay to the provider the outstanding amount plus interest at 12% as well as the costs of the challenge and all attorney fees." 75 Pa. Const. Stat. Ann. § 1791(b)(6). Moreover, the statute provides treble damages for circumstances in which the insurer fails to submit the insured's claims to a peer review organization, providing that, "[c]onduct considered to be wanton shall be subject to a payment of treble damages to the injured party." 75 Pa. Const. Stat. Ann. § 1791(b)(4).

42 Pa. Const. Stat. Ann. § 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

While the statute does not otherwise define, "bad faith," Pennsylvania courts have defined it as "'any frivolous or unfounded refusal to pay proceeds of a policy.'" *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 311 (3d. Cir. 2003) (quoting *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). In order to state a claim for bad faith under the Pennsylvania Bad Faith Statute, a plaintiff must show (1) that the insurer had no reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded the reasonable basis. *Id.* (citing *Keefe v. Prudential Prop. and Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000); *see also W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 312 (3d. Cir. 2003).

While the Pennsylvania Supreme Court has not directly addressed the issue of whether section 8371 is preempted by the specific provisions in the MVFRL, the Third Circuit Court of

12

Appeals has predicted that the Pennsylvania Supreme Court would find that the Pennsylvania MVFRL provides the exclusive remedy for claims of first party medical benefits. *Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir. 1994). In that case, the health care provider- plaintiff brought an action against the defendant insurance company based on the insurance company's alleged refusal to pay the insured's medical bills. *Id.* The plaintiff alleged unreasonable denial of benefits under both the Pennsylvania MVFRL and the Pennsylvania bad faith statute. *Id.* In affirming the district court's decision, the Third Circuit held that the specific provisions of the MVFRL "must be deemed an exception to the general remedy for bad faith contained in [the Bad Faith statute]." *Id.* As such, the Court held that the MVFRL provided the exclusive "first party remedy for bad faith denials by insurance companies with respect to claims arising out of automobile accident injuries." *Id.* (citing *Barnum v. State Farm Mut. Auto. Ins. Co.*, 430 Pa. Super. 477 (Pa. Super. Ct. 1993) for the proposition that damages provided for by section 1797 for "wanton" conduct in denying a claim for first party medical benefits cannot be reconciled with punitive damages for the same conduct under §8371).[1] *See also Schleinkofer v. Nat'l Cas. Co.*, 339 F. Supp. 2d 683, 686-7 (W.D. Pa. 2004).

However, in the context of circumstances in which Miller alleges both denial of first party medical benefits under the MVFRL, and mishandling of Miller's claims and/or misuse of the peer review process under the Bad Faith statute, there appears to be a conflict as to whether the rule set

---

[1]The Court notes that the precedential value of the Superior Court's decision in *Barnum* is now questionable, as the Supreme Court of Pennsylvania granted, reversed and remanded the plaintiff's appeal from the Superior Court on other grounds, subsequent to the Third Circuit's opinion in *Gemini*. *Barnum v. State Farm Mut. Ins. Co.*, 652 A.2d 155 (Pa. 1994); *see also Harris v. Lumberman's Mut. Cas. Co.*, 409 F. Supp. 2d 618, 621, n. 5 (E.D. Pa. 2006) and *Stephano v. Tri-Arc Financial Services, Inc.*, No. 3: cv- 07- 0743, 2008 WL 625011 at *7, n. 10 (M.D. Pa. Mar. 4, 2008).

13

forth in *Gemini* applies. *See Perkins v. State Farm Ins. Co.*, 589 F. Supp.2d 559, 564 (M.D. Pa. 2008). Several district courts analyzing *Gemini* in this context have predicted that the Pennsylvania Supreme Court would find that a plaintiff's bad faith claims are not preempted by section 1797, when the plaintiff's claims allege conduct beyond the scope of section 1797. Specifically, courts have held that the punitive damages provisions of the Bad Faith statute are not preempted by section 1797(b) when the complaint alleges both an unreasonable denial of benefits based on a peer review report and abuse of the peer review process itself. *See, e.g., id.* (holding that the plaintiff's claims that the PRO used was biased was outside the scope of section 1797; therefore, the plaintiff could bring this claim under the Bad Faith statute, in addition to claims for first-party medical benefits); *Schwartz v. State Farm Ins. Co.*, No. Civ. A. 96-160, 1996 WL 189839 at *4 (E.D. Pa. April 18, 1996) (holding that, where the plaintiff attacks the use of the particular PRO and abuse of the peer review process, "nothing in *Barnum* or *Gemini* suggests that a bad faith insurance coverage claim under §8371 is barred by §1797"); *Champlost Family Med. Practice, P.C. v. State Farm Ins.*, No. Civ. A. 02-3607, 2002 WL 31424398 at *2 (E.D. Pa. Oct. 29, 2002) (citing *Panameno v. State Farm Mut. Auto. Ins. Co.*, Civ. A. No. 99-1490, 1999 U.S. Dist. LEXIS 7321, 1999 WL 320916, at * 1 (E.D. Pa. May 19, 1999)) (quotations omitted); and *Neun v. State Farm Ins. Co.*, No. Civ. A. 95-7577, 1996 WL 220980, at *3 (E.D. Pa. May 2, 1996). *See also Bennet v. State Farm Fire & Cas. Ins. Co.*, 890 F. Supp. 440, 443 (E.D. Pa. 1995); *Carson v. ITT Hartford Ins. Group*, Civ. A. No. 91-3133, 1991 WL 147469, at *3 (E.D. Pa. July 24, 1991) (noting, "[t]his is not to say that an insured covered by the MVFRL could never have a claim for punitive damages under § 8371. For example, where a person's policy is revoked without cause or for an improper cause, the procedures and

14

remedies in § 1797 do not apply and a 'claim' under § 8371 might lie").[2]

The Court finds the logic of these cases persuasive. Under Pennsylvania rules of statutory construction:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa. Const. Stat. Ann. §1933. The Pennsylvania Bad Faith statute is a general statute which applies to all insurance claims. 42 Pa. Const. Stat. Ann. §8371; *Harris v. Lumberman's Mut. Cas. Co.*, 409 F.Supp.2d 618, 620-621 (E.D. Pa. 2006). However, the Pennsylvania provides specific relief for claims of first-party medical benefits. 42 Pa. Const. Stat. Ann. §1797(b); *Harris*, 409 F. Supp. at 620. Where both the Pennsylvania MVFRL and the Pennsylvania Bad Faith statutes are premised

---

[2]Several Pennsylvania trial courts have also held that, where a plaintiff seeks first-party medical benefits under the MVFRL, he is not necessarily precluded from also bringing a bad faith claim based on a defendant's alleged abuse or misuse of the peer review process itself. *See, e.g., Hlandinic v. Nationwide Ins. Co.*, 44 Pa. D. & C. 4th 571, 574, 2000 WL 1137834 (Pa. Ct. Com. Pl. Feb. 8, 2000) (holding that "[t]he relevant sections of the MVFRL do not address an abuse of the peer review process; therefore, a claim made under [the Bad Faith statute] would be appropriate in addressing whether the defendant acted in bad faith by choosing a peer review organization that had previously provided negative review") (emphasis added)) (citing *Murphy v. Progressive Ins. Co.*, 27 Mercer L.J. 373, 377 (Pa. Ct. Com. Pl. 1996) and *Milton S. Hershey Ins. Co.*, 21 Pa. D. & C. 4th 62, 71 (Pa. Com. Pl. 1992)); *Bacstrom v. State Farm Ins. Co.*, 40 Pa. D. & C. 4th 330, 336, 1998 WL 1108423 (Pa. Com. Pl. January 26, 1998) (finding that claims under the MVFRL and the Bad Faith statute are reconcilable, in circumstances where "the insurer has allegedly submitted the insured's claims to a PRO of its choice for review and has acted in bad faith in the process. ... Eliminating the [plaintiff's] claim for bad faith under section 8371 would serve to insulate [the defendant] from sanctions for bad faith conduct simply because they submitted the [plaintiff's] case to a PRO for review") (citing *Pierce v. State Farm Ins. Co.*, 27 Pa. D. & C.4th 464 (Pa. Ct. Com. Pl. Oct. 20, 1994)); *see also* Ronca, Sloan, *Pennsylvania Motor Vehicle Insurance: An analysis of the Financial Responsibility Law* (2d ed. 2007) ("When the [Pennsylvania Supreme] court is presented with the issue of whether §8371 and §1797 are reconcilable ... the court will recognize a §8371 claim in the context of a §1797 case, but only in certain situations such as where the insured can clearly demonstrate bad faith on the part of the insurer by the manner in which the insurer utilized a PRO, where the insured can demonstrate that the insurer did not properly invoke or follow the peer review procedures, and where the insurer uses the peer review procedure to determine the causal relation of the injuries alleged and the collision.").

15

on the same conduct, *i.e.* an unreasonable denial of first-party benefits, the statutes are irreconcilable and, as the specific provisions of the MVFRL will preempt the general provisions of Pennsylvania bad faith statute. *Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir. 1994); *Harris*, 409 F.Supp.2d at 620-621. However, here Miller alleges that he is entitled to damages pursuant to the MVFRL because Allstate failed to make payments for medical expenses "without reasonable justification", in breach of the insurance contract. Compl., Count I. Miller further alleges that he is entitled to punitive damages pursuant to the Bad Faith statute as follows:

> The Defendant, through its representatives, agents and/or employees, has breached its duty to the Plaintiff to act in good faith and fair dealing by the following actions:
>
> (a) Misrepresenting the pertinent facts of the policy or contract provisions relating to coverage and issues;
>
> (b) Failing to acknowledge and act promptly upon written and/or oral communications with respect to claims arising under the subject insurance policy;
>
> (c) Failing to adopt and implement reasonable standards for a prompt investigation of claims arising under the subject insurance policy;
>
> (d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been provided to the Defendant and/ or representatives;
>
> (e) Not attempting in good faith to effectuate a prompt, fair and equitable payment of the claims for which the Defendant's obligations under the policy has become reasonably clear;
>
> (f) Compelling its insured to institute litigation to recover amount due under the subject policy;
>
> (g) Engaging in inherently defective policy, practice or custom whereby the Defendant's insured would receive inadequate or ineffective service from the

16

Defendant with respect to the handling of first party claims;

(h) Misusing the peer review process as a method to minimize its financial exposure under the subject insurance policy;

(i) Misusing the peer review process as a method to minimize its exposure to Plaintiff's potential underinsured motorist claim; and

(j) Following a peer review report that is defective on its face as a basis to deny medical coverage to the Plaintiff.

Compl, ¶ 38.

Plaintiff's claims under the Bad Faith statute are premised on Allstate's alleged abuse of the peer review process and the alleged mishandling of Miller's claims, which are separate and distinct from his claims that he is entitled to payment of his medical bills. Moreover, claims of the mishandling of insurance claims and the abuse or misuse of the peer review process fall outside the scope of the protections afforded an insured by the MVFRL because the MVFRL does not provide specific relief for such claims. As such, Miller is entitled to bring these separate claims under both statutes. An appropriate order follows.

## ORDER

And now, to wit, this 5th day of March 2009, it is hereby ORDERED that the Defendant's Motion to Strike is denied. It is further ORDERED that the Defendant's Motion to Dismiss is denied, without prejudice to readdress these issues at summary judgment stage.

BY THE COURT:

*Kim R. Gibson*

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**