IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON S. MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 07-260 |
| ALLSTATE FIRE & CASUALTY | ) Judge Kim R. Gibson |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

## I. Background

This matter comes before the Court on nonparty movant Perspective Consulting, Inc.'s Motion for Protective Order and supporting brief. Doc. Nos. 32 & 33. Plaintiff Jason Miller filed responsive documents. Doc. Nos. 34 & 35.

On or about February 25, 2008, Perspective Consulting, Inc. ("Perspective") received a subpoena to produce documents from Miller. Doc. No. 32, ¶ 1. Perspective is prepared to respond to portions of the subpoena upon receipt of a release from Miller that his counsel is authorized to request and receive Miller's confidential medical information. *Id.* ¶ 3. Perspective agreed to respond to Document Requests 2, 3, 4, 5, and 11. *Id.* ¶ 4. Perspective avers that it has no documents responsive to Document Requests. 6 and 7. *Id.* ¶ 5. Perspective seeks a protective order regarding Document Requests 1, 8, 9, and 10. *Id.* ¶ 6.

Perspective styles itself a "certified small Women's Business Enterprise located in Collegevlania, Pennsyvlania", which "provides medical-legal consulting services . . . in managing litigation related to medicine and healthcare. *Id.* ¶ 8; Doc. No. 32, ex. 2, ¶¶ 3,5. Perspective makes

1

the serious allegation that Miller's document requests are being made solely for the purpose of harassing Perspective. Doc. No. 32, ¶ 12. Perspective believes that producing the requested documents will "falsely portray Perspective" and could aid a smear campaign that could put Perspective "out of business." *Id.* ¶ 13. Additionally, Perspective claims that the Health Insurance Portability and Accountability Act (HIPAA) regulates the way it can respond to Document Requests 1, 9, and 10, and complying with the regulations and the request would require substantial efforts and "an inordinate amount of time and resources." Doc. No. 32, ex. 2, ¶¶ 12-13; Doc. No. 33, p. 1. Perspective argues: "If Perspective is forced to respond to Plaintiff's irrelevant, improper, and unduly burdensome document requests, Perspective could realistically be put out of business." Doc. No. 33, p. 1.

Generally, Miller responds by stating that his requests for production are relevant, not subject to HIPAA regulations, and not propounded for a malevolent purpose unrelated to this litigation; furthermore, Miller believes that the requests are not overly burdensome. Doc. Nos. 34 and 35.

## II. Legal Standards

### A. Discovery from a Nonparty via Rule 45 Subpoena

Discovery of documents from a nonparty is accomplished pursuant to Rule 45. Fed. R. Civ. P. 34(c) ("As provided in rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). The function and purpose of a subpoena is to compel the production of documents relevant to the disputed matter. 9A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2456 (current through 2008 update). "Under Rule 45(a)(1)(D), a subpoena duces tecum requires the responding party to permit the inspection, copying, testing, or sampling of the designated materials." *Id.*

## B. Subpoena Subject to Limitations on Scope of Discovery

A Rule 45 subpoena must fall within the scope of proper discovery under Federal Rule of Civil Procedure 26(b) (1). *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, 2008 WL 4952445 (D.N.J. Nov. 18, 2008). Thus, the production sought by Miller must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible in itself or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); *see also* 45 James Wm. Moore *et al.*, Moore's Federal Practice § 45.03 (current though Dec., 2008). "The party moving to compel production of documents bears the initial burden of explaining how the requested information is relevant. Once that showing is made, the burden shifts to the objecting party to explain why discovery should not be permitted." *Id.*

## C. Costs of Production and Requirement to Avoid Undue Burden or Expense

A nonparty responding to a subpoena is typically required to pay its own costs of production. Rule 45(c)(1) expressly establishes the responsibility of courts and parties to avoid "imposing undue burden or expense" on the nonparty subject to the subpoena. Fed. R. Civ. P. 45(c)(1). Therefore, courts frequently order that items be produced, inspected and copied at the subpoenaed party's office, in a manner that is convenient and limits costs. *See* 45 Moore's Federal Practice § 45.03.

To determine whether a production subpoena creates an "undue burden or expense", courts typically assess factors such as the following: 1) relevance of the information sought; 2) the party's need for the production; 3) the breadth of the request; 4) the time period covered by the request; 5) the request's particularity; and 6) the burden imposed. *Id.* § 45.32. Additionally, that the subpoena is directed to a nonparty is an appropriate consideration in this undue burden calculus. *See* Fed. R. Civ. P. 45, Advisory Committee Note of 1991 ("A nonparty required to produce documents or

3

materials is protected against significant expense resulting from involuntary assistance to the court."). Furthermore, an undue burden is often created where the material sought from a nonparty is easily available from a party; however, this factor alone is not dispositive.

## D. Remedies Available for Subpoena Recipients

The recipient of a subpoena that directs production or inspection may utilize three separate procedures to avoid compliance: 1) serving written objections pursuant to Rule 45(c)(2)B); 2) moving to quash or modify pursuant to Rule 45(c)(3); or 3) moving for a protective order under Federal Rule of Civil Procedure 26(c). Options two and three often turn on the issue of "undue burden" and hence often involve similar analyses; since Perspective has moved expressly only for a protective order, the Court will detail only the standards that expressly apply to protective orders.

Rule 26(c)(1) states: "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending .... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Additionally, "[l]egitimate interests in privacy are among the proper subjects of [Rule 26(c)'s] protection." *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000). The party seeking the protective order must demonstrate that good cause exists for the protection of the information at issue. *Id.* "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede Trust Co. v. Hutton*, 56 F.3d 476, 483 (3d Cir. 1995).

The Third Circuit instructed that the decision to grant a protective order should focus upon the specific circumstances, and balance the private versus public interests. *Id.* Among other factors, the Third Circuit mentions that the following should be considered: "1) whether disclosure will

4

violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public." *Id.* The Third Circuit further explained: "'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984)).

This Court has broad discretion over the scope of a protective order. *Rodgers v. United States Steel Corp.*, 536 F.2d 1001, 1006 n. 12 (3d Cir. 1976); *see also Pearson*, 211 F.3d at 73.

## III. Analysis

### A. Whether Requested Documents are Privileged

As to three of the disputed items, Requests 1, 9, and 10, Perspective claims that it "is not permitted to disclose [the requested documents] pursuant to the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 ("HIPAA").

Discovery is only available as to nonprivileged documents. Fed. R. Civ. P. 26(b)(1).

Perspective states without support that it is a "covered entity" as defined by HIPAA. Doc. No. 33, p. 4. Perspective then argues, again without support, that because the requested "[p]eer review reports and related documentation contain detailed information regarding the subject's medical and healthcare information," that Perspective must comply with HIPAA regulations in

5

producing the reports.[1] Meanwhile, also without providing any support, Miller asserts that Perspective is not a "covered entity" and therefore HIPAA is not applicable. Doc. No. 35, p. 6. In the alternative, Miller argues that even if HIPAA is applicable, it does not operate to prohibit the production of the documents.

The Court finds that the peer review reports and related documentation possessed by Perspective are not covered by HIPAA. Entities covered by HIPAA include: "(1) a health plan, (2) a health care clearinghouse, and (3) a health care provider . . ." 45 C.F.R. § 160.102.

Perspective is obviously neither a "health plan" nor a "health care clearinghouse." A health care provider is a provider of actual medical services, such as physician services directly used to treat a patient. *See* 45 C.F.R. § 160.103. Neither Perspective nor a physician it hires to complete a report provides actual medical services. Instead, Perspective hires a physician only to review the records of medical services provided by others.

Because Perspective is not a "covered entity", therefore HIPAA does not prevent enforcement of the subpoenas. *See In re Asbestos Products Liability Litigation*, 2009 WL 466381, at *2 (E.D. Pa. Feb 25, 2009).

Addditionally, even if HIPAA does apply, many of the HIPAA restrictions only apply where a subpoena is not accompanied by a court order, a condition that as of the date of this Order, is no longer met. Furthermore, HIPAA only restricts the release of "protected health information", which the regulations specifically define as "individually identified health information maintained in or

---

[1]The Court was particularly flummoxed by Perspective's insistence that Miller comply with notification efforts as to private parties, even though Miller cannot possibly know the identities of these parties prior to the production. If HIPAA did apply, it would obviously be Perspective's responsibility to comply with the appropriate notification provisions.

6

transmitted in any form . . . ." 45 C.F.R. § 160.103. In this matter, Plaintiff has indicated his willingness to accept redacted documents, which would cease to be individually identifiable; this process would obviate any of the patient privacy interests potentially at stake.

Regardless of HIPAA applicability, it seems a prudent course of action to limit privacy intrusions to the extent possible. Therefore, the Court is willing to enter a protective order that prohibits those involved in this litigation from using or disclosing any individual's health information obtained from Perspective for any purpose other than this litigation; furthermore, such order could require the return of the documents to Perspective, or the destruction of private aspects of the document at the end of this litigation, responsive to Perspective's concerns about the spread of its confidential business documents. If such a protective order is desired by Perspective, Perspective shall submit a proposed order by March 20, 2009.

### B. Propriety of Protective Order as to Specific Document Requests

#### 1. Document Request 1.

Document Request 1 sought:

> All peer review reports authorized and/or signed and/or containing the name of Jane L. McBride, D.C., for the period of 2002 to the present. The last name of each person who is the subject of each peer review may be redacted, leaving only the first letter of the last name and the full first name.

Perspective claims that this request seeks information related to third parties and is not relevant to the medical analysis of Plaintiff's injuries. Doc. No. 32, p. 3. Perspective cites *Forstater v. State Farm Auto Ins. Co.* in support of its claim. 1992 U.S. Dist. LEXIS 3589 (E.D. Pa. Mar. 24, 1992). *Forstater* found that a request seeking a peer review organization's "entire claims and investigation file or *files including all insurance policies of the defendants*" was overly broad. *Id.*

7

at *4 (italics in original). However, in this matter, Miller only requests peer review reports authorized or signed by a particular reviewer for a particular period of time. The Court finds such information to be relevant to the bad faith claim in this action.

Perspective complains that responding to Document Request 1 would be an immense burden, stating it "does not have enough staff to complete the process . . . without spending an inordinate amount of time and resources which would normally be expended on its everyday workload. This, in turn, would cause Perspective to lose a large amount of revenue." Doc. No. 32, pp. 4-5.

In considering the tests for undue burden, the Court finds that the requested information is highly relevant to the bad faith claim, and greatly needed by Miller. Furthermore, the Court finds the request to be limited in time period, and limited to the reviews prepared by a single person. Nonetheless, the Court acknowledges Perspective's status as a nonparty. Furthermore, the Court has considered Perspective's averments regarding the alleged difficulty of procuring the requested documents.

Therefore, in balancing these interests, the Court hereby orders that the subpoena will be enforced, but only upon the condition that Miller pay for the costs of production. Cost-shifting is frequently ordered in cases of third party subpoena requests, and the courts typically consider factors such as the nonparty's interest in the outcome of the case, the nonparty's ability to bear the costs as compared to the requesting party's, and whether the litigation is of public importance. *See Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008).

The Court finds that while Perspective, as represented in its filings, appears overly interested in the outcome of the case, Perspective also appears only moderately able to bear the costs of such production. Therefore, the Court orders that Miller will pay for one-half the costs of the production of documents related to this request. Such costs would include the fair and reasonable

8

costs of employee hours spent performing the necessary administrative tasks. Such costs do not include any attorney hours spent on this matter or on the production of documents. This Order may encourage Miller to further narrow the breadth of this request. Because Miller has represented to the Court his willingness to aid in this process, the Court directs that the parties must first agree upon the process to be used in producing the documents, so that it may be as cost-efficient as possible.

### 2. Document Request 8

Document Request 8 sought:

> All contracts, agreements, fee schedules, letters, and/or written documentation establishing a contractual and/or business relationship between Perspective Consulting, Inc. and the Allstate for the period of 2002 to the present regarding the use of peer reviews, independent medical examinations, medical record reviews, diagnostic film reviews, legal nurse consulting, medical bill auditing, case management and /or life care planning or other medical-legal consulting services provided to the Defendant.

Perspective essentially argues that this information is not relevant, could be discovered from Allstate, and is being sought for an improper purpose. The Court believes the information is relevant. The Court furthermore neither understands nor credits Perspective's alarmist arguments regarding the allegedly malicious purposes of Miller in obtaining these documents, which appear to have been created in the normal process of business. Even more difficult to understand is how such documents, absent allegations that they are somehow false or were created with some intention to deceive, could "misrepresent" and "falsely portray" Perspective's services.

Moreover, the Court finds that such information is relevant to the claims and seems reasonably calculated to lead to admissible evidence. While Perspective argues that the documents could be discovered from a party to this matter, Allstate, the Court believes that discovery of such documents from two differing sources may facilitate the bringing forth of all relevant facts in this matter, so as to allow the Court to promote the search for truth. Nonetheless, the Court, assessing

9

the same reasons as those stated in the analysis of Document Request 1, the Court elects to order cost shifting. In this instance, given the likely availability of the documents from Allstate, the Court orders Miller to pay the entire costs of production, not including any attorney fees. Thus, Miller may be encouraged to measure how aggressively to pursue this particular request. The parties are instructed to agree in advance regarding an efficient method for executing this production.

### 3. Document Request 9

Document Request 9 sought: "A complete copy of all request for Service Forms received from Allstate for the period of 2002 to the present regarding peer reviews in Pennsylvania."

Perspective again argues that such information is "completely irrelevant." The Court disagrees, finding the such information is relevant and seems reasonably calculated to lead to admissible evidence.

For the same reasons as those stated in the analysis of Document Request 8, the Court will shift the entire burden of costs of production to Miller, not including any attorney fees, so that Miller, given the possibility of duplicative discovery from Allstate, may measure how aggressively to pursue this particular request.

### 4. Document Request 10

Document Request 10 sought: "All peer review reports regarding Pennsyvlania claims prepared at the request of Allstate for the period of 2002 to the present."

While Perspective argues that such information is "completely irrelevant", the Court disagrees and finds that such information is relevant and seems reasonably calculated to lead to admissible evidence. Perspective also argues that this information is available from Allstate.

For the same reasons as those stated in the analysis of Document Requests 8 and 9, the Court will shift the entire burden of costs of production to Miller, not including any attorney fees, so that

Miller, given the possibility of duplicative discovery from Allstate, may measure how aggressively to pursue this particular request.

## IV. Conclusion

In conclusion, the Court believes that the cost-shifting described above, and the contemplation of a protective order, will serve the interests of Perspective, the parties to this litigation, and the public. An appropriate Order follows.

11

## ORDER

And now, on this 12th Day of March, 2009, the Court hereby enforces the Subpoena served upon Perspective Consulting, Inc. on or about February 25, 2008. However, the Court also recommends that the parties file an appropriate proposed protective order in accordance with the Court's Opinion regarding privacy, and limitations to this litigation, as detailed above. The Court did not find any justifiable evidence that Plaintiff was conducting this discovery for the malevolent purpose of harming Perspective's reputation. Furthermore, given the entire context of the case, the Court orders that as to Document Request 1, half of the costs of production should be shifted to Miller. As to Document Requests 8, 9, and 10, all costs for the desired production shall be shifted to Miller; however, prior to such production and the consequent shifting of costs, the parties must agree upon a cost-efficient method of production.

BY THE COURT:

**March 17, 2009**

*/s/ Kim R. Gibson*

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**